**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**NORTHERN DIVISION**

| | |
|---|---|
| WALTER JOHN DUNCOMBE, Plaintiff, v. BRIAN PETERSON, Defendant. | **MEMORANDUM DECISION AND ORDER** Case No. 1:08-CV-137 DS District Judge David Sam |

Plaintiff, Walter John Duncombe, filed this pro se civil rights suit under 42 U.S.C. § 1983 while incarcerated at the Davis County Jail. *See* 42 U.S.C.A. § 1983 (West 2010). Plaintiff paid the required filing fee in full. The United States Marshals served process upon the only named defendant, Brian Peterson, who filed a *Martinez* Report addressing Plaintiff's allegations. Before the Court is Defendant's Motion for Summary Judgment.

### I. Facts[1]

Plaintiff's Complaint stems from events incident to Plaintiff's arrest for driving under the influence of alcohol on March 11, 2007. At approximately 12:40 a.m., Officer Christopher

---

[1] The material facts presented here are drawn primarily from Defendant's *Martinez* Report and supporting documents. Except as noted, these facts are essentially undisputed.

Kovalsky, an Ogden City Police officer, observed Plaintiff driving a red passenger car which failed to stop for a stop sign and nearly struck a mini-van directly in front of Kovalsky's patrol car. Kovalsky activated his emergency lights and pulled Plaintiff over. While approaching the vehicle Kovalsky observed a 32-pack of beer in the rear seat. Kovalsky asked for Plaintiff's driver's license and Plaintiff stated that he did not have any identification with him. After Plaintiff refused to provide his name Kovalsky ordered Plaintiff to get out of his car. As Plaintiff exited the car, Kovalsky noted that Plaintiff's balance was poor and that he had a strong odor of alcohol on his breath. Kovalsky also observed that Plaintiff's eyes were glassy and his speech was slurred. Suspecting that Plaintiff was intoxicated, Kovalsky called for a traffic unit to come administer field sobriety tests.

    Ogden City Police Officer Brian Peterson responded to the scene and assumed control of the situation. Plaintiff was uncooperative and refused to provide his name to Peterson. Peterson then ran the registration on the vehicle and found that it was registered to Troy Slot. After obtaining an electronic picture of Slot, Peterson determined that it matched Plaintiff's appearance with the exception of the hair length. Peterson then administered field sobriety tests which Plaintiff failed. After

Plaintiff refused to submit to a portable breathalyzer test Peterson arrested Plaintiff on suspicion of driving under the influence of alcohol (D.U.I.).

Plaintiff was taken to the Ogden City Police Department where Peterson advised Plaintiff of his legal rights and the consequences of his refusing the breathalyzer test. Peterson then prepared an Affidavit for Search Warrant ("Affidavit") to obtain a blood sample from Plaintiff. The Affidavit mistakenly identified Plaintiff as Troy Slot based on Peterson's preliminary investigation into Plaintiff's identity. Due to the late hour the Affidavit was presented via telephone to Utah Second Judicial District Judge Brent West who found probable cause and authorized the search. Peterson entered Judge West's name on the signature line of the Search Warrant along with the notation "By Brent Peterson 0324." The Search Warrant was later signed by Judge West with the notation "3-11-07" next to his signature. At some point another notation in the same handwriting was made underneath the signature which reads "3-12-07 9:19 a.m.". Pursuant to the Search Warrant a blood sample was taken from the Plaintiff. Plaintiff was booked into the Weber County Jail under the name Troy Slot at approximately 5:00 a.m..

At approximately 12:30 p.m. the same day Peterson was contacted at his home by jail personnel and informed that

Plaintiff had been accurately identified as Walter Duncombe, not Troy Slot. Peterson immediately went to the jail and confirmed that the person he had arrested under the name Troy Slot was, in fact, the same person whom the jail had later identified as Walter Duncombe. Peterson checked Plaintiff's driver's license records and found that Plaintiff's license had been revoked, that he had a conditional license requiring an ignition interlock device on any vehicle he drove, and that Plaintiff had been convicted four times in the previous ten years for driving under the influence of alcohol. Plaintiff was then re-booked into the jail under his correct name on charges of third degree D.U.I., driving on a revoked driver's license, illegally driving on a conditional license, failing to stop at a stop sign, and interference with arrest.

On March 12, 2007, Peterson contacted Judge West to submit the Return of Search Warrant and to explain that the original warrant was issued using the wrong name. Judge West instructed Peterson to prepare an Amended Affidavit for Search Warrant ("Amended Affidavit") stating Plaintiff's correct name and any additional relevant information. A copy of the Amended Affidavit was given to Judge West and another copy was included with Peterson's original report. (*Martinez* Rpt. Ex. F.) On March 5, 2008, Plaintiff pled no contest to the felony D.U.I. charge in

exchange for dismissal of the remaining charges. On April 9, 2008, Plaintiff was sentenced to an indeterminate prison term of up to five years.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Cellotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). Thus, Rule 56(a) of the Federal Rules of Civil Procedure allows a party to move "with or without supporting affidavits for a summary judgment in the party's favor upon all or any part of [a claim]." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of showing "that there is an absence of evidence to support the non-moving party's case." *Cellotex*, 477 U.S. at 325. This burden may be met merely by identifying portions of the record which show an absence of evidence to support an essential element of the opposing party's case. *Johnson v. City of Bountiful*, 996 F. Supp 1100, 1102 (D. Utah 1998).

Once the moving party satisfies its initial burden "the burden then shifts to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of [the disputed] element." *Id.* Federal Rule of Civil Procedure 56(e) requires a nonmovant "that would bear the burden of persuasion at trial" to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 671 (10th Cir. 1998). The specific facts put forth by the nonmovant "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." *Thomas v. Wichita Coca-Cola Bottling*, 968 F.2d 1022, 1024 (10th Cir. 1992). Mere allegations and references to the pleadings will not suffice. However, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lopez v. LeMaster*, 172 F.3d 756, 759 (10th Cir. 1999).

### III. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on each of Plaintiff's claims. Defendant's motion relies primarily on the affidavits and other evidence contained in the *Martinez* Report. Defendant's motion also raises the defense of qualified immunity. Plaintiff

6

has had ample opportunity to respond and has submitted his own affidavit and other documents in opposition to Defendant's motion.

Plaintiff's Complaint, construed liberally, asserts the following claims: (1) use of excessive force during arrest and booking in violation of the Fourth Amendment; (2) unreasonable search and seizure under the Fourth Amendment based on forcible blood draw; (3) denial of drinking water and restroom access in violation of the Fifth and Fourteenth Amendments; (4) denial of procedural due process under the Fifth and Fourteenth Amendments; and, (5) denial of equal protection under the Fourteenth Amendment.  The Complaint seeks compensatory and punitive damages, costs, and attorney fees.  The Court will address each of these claims in turn.

### A. Excessive Force

Plaintiff's excessive force claims are based on three primary allegations: (1) Plaintiff was detained in handcuffs on the roadside for 2-3 hours before being transported to the police department, (2) Plaintiff was kept handcuffed at the police department for 4-6 hours before being transported to the jail; and, (3) Plaintiff was physically assaulted and restrained in the process of obtaining a blood sample from him involuntarily.

Each of these allegations is properly analyzed under the

7

Fourth Amendment prohibition against unreasonable seizures.  U.S. Const. amend. IV.  The Supreme Court has recognized that the reasonableness of a seizure depends not just on why or when it is made, but also on how it is accomplished.  *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865 (1989).  The touchstone of the reasonableness inquiry is whether the officers' actions are objectively unreasonable.  Thus, the inquiry focuses not on the officers' particular motivations, nor on the arrestee's subjective perception of the intrusion, but on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them."  *Id*. at 397.  Moreover, the Fourth Amendment "does not require [police] to use the least intrusive means in the course of a detention, only reasonable ones."  *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) (citation omitted).

Although the Fourth Amendment's reasonableness inquiry cannot be reduced to a simple formula or bright line test, the Supreme Court has delineated three, non-exclusive factors relevant to analyzing the reasonableness of force used during arrest and booking: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490

8

U.S. at 396. Applying these factors, the Supreme Court has recognized handcuffing as an appropriate response to officer-safety concerns even during investigative detentions. *Muehler v. Mena*, 544 U.S. 93, 125 S. Ct. 1465 (2005). However, the justifiable initial use of handcuffs can become unreasonable if other factors, such as prolonged duration, "affect the balance of interests under *Graham*." *Id*. at 100.

To state an excessive force claim, a plaintiff must allege "some actual injury that is not de minimus, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). In *Cortez* the Tenth Circuit noted that although proof of physical injury such as visible cuts, bruises, etc., is not an essential element of an excessive force claim, "the absence of injury in the context of the totality of the circumstances may suggest the absence of excessive force." *Id*. at 1129 n. 24.

Here, Plaintiff has not presented admissible evidence showing that he suffered any significant physical or emotional injury due to extended or excessively forceful handcuffing. Plaintiff's only evidence regarding the force used during handcuffing is his statements that Peterson "placed the cuffs on [Plaintiff's] wrists rather forcefully and clamped them down as hard as he could;" and, that when Plaintiff complained about the cuffing Peterson "hiked [Plaintiff's] hands up with excessive

9

force and higher than was necessary" causing Plaintiff to fear "[his] shoulder would pop out of place." (Duncombe Aff. at 2.) It practically goes without saying that the use of handcuffs is entirely appropriate when arresting an intoxicated and uncooperative suspect for driving under the influence of alcohol. Moreover, despite Plaintiff's subjective observations regarding the handcuffing, there is no evidence that the force used here was objectively unreasonable. Instead, the reasonableness of force used is supported by Plaintiff's failure to show any significant physical or emotional injury.

Although Plaintiff has submitted medical records showing that he was treated in 2009 for right shoulder pain, besides Plaintiff's self-serving statements there is no evidence linking Plaintiff's shoulder problems to the handcuffing incident which occurred more than two years earlier. While the medical records indicate that in 2009 Plaintiff reported the handcuffing incident to doctors as a possible cause for his shoulder problems, none of the medical findings support, much less adopt, this theory. Rather than showing any traumatic injury, the x-ray and MRI results submitted by Plaintiff show only "mild impingement" and "no definite tear" in the rotator cuff, and a "mild degenerative change at the acromioclavicular joint." (Pl.'s Resp. Br. Ex. A-B.) Plaintiff has not submitted any evidence showing that these

10

symptoms were likely caused by the handcuffing two years earlier. More importantly, none of Plaintiff's medical records from the Weber County Jail, where Plaintiff was initially housed following his arrest, involve complaints about arm or shoulder pain.

Plaintiff has also offered no evidence, besides his self-serving affidavit, to support his claim that he was slammed to the ground while handcuffed in order to obtain the blood sample. Despite Plaintiff's statements that the experience was the most frightening experience of his life, and that he now "know[s] what it feels like to be raped," there is no evidence that Plaintiff suffered any physical or emotional injury during the blood draw. (Duncombe Aff. at 3.) Plaintiff has not submitted any records showing that he ever requested medical or psychological treatment as a result of the incident, nor does he report suffering any ongoing emotional or psychological problems. The lack of such symptoms or treatment records thoroughly undermines Plaintiff's statements regarding the degree of psychological trauma he experienced.

Based on Plaintiff's failure to submit evidence showing that he suffered any significant physical or emotional injury from the handcuffing or blood-draw, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's excessive force claims.

**B. Unreasonable Search and Seizure--Blood Draw**

Plaintiff challenges the reasonableness under the Fourth Amendment of the involuntary blood draw on two grounds: (1) the Affidavit for Search Warrant and the Search Warrant itself were initially issued in the wrong name; and, (2) the search warrant was initially issued "remotely" via telephone and was not actually signed by Judge West until hours after it was executed. Plaintiff does not appear to dispute that there was probable cause to obtain a blood sample from him; instead, he contends merely that these alleged procedural errors rendered the search warrant--and by extension the blood draw itself--invalid.

Plaintiff does not offer any legal support for his assertion that an otherwise proper search warrant is invalid if mistakenly issued under an incorrect name. Plaintiff does not deny that he is, in fact, the person described in the Affidavit for Search Warrant as the driver of the vehicle. Nor does Plaintiff deny that he is the person upon whom the warrant was intended to be executed. Given that the misidentification here resulted from Plaintiff's refusal to provide his true name, or at least his failure to correct Defendant's reasonable conclusion that Plaintiff was the registered owner of the vehicle, Plaintiff cannot "cry foul" over the name used on the search warrant. Even if the warrant were issued under the name "John Doe" it would

12

still be valid if executed upon the person for whom it was intended. To hold otherwise would only encourage a suspect to withhold his true name in the hope of later challenging the validity of any search warrant executed upon him. Such charades are clearly contrary to the purpose of the Fourth Amendment. Thus, the Court concludes that the involuntary blood draw from Plaintiff was not unreasonable based on the search warrant being initially issued with an incorrect name.[2]

Plaintiff's claim arising from the telephonic issuance of the warrant is also without merit. Plaintiff's argument stems from a misreading of Rule 40(l) of the Utah Rules of Criminal Procedure, which is entitled "*Remotely communicated search warrants*." Subsection (l)(1) of that rule states:

> *Means of Communication*. When reasonable under the circumstances, a search warrant may be issued upon sworn or affirmed testimony of a person who is not in the physical presence of the magistrate, provided the magistrate is satisfied that probable cause exists for the issuance of the warrant. All communication between the magistrate and the peace officer or prosecuting attorney requesting the warrant may be remotely transmitted by voice, image, text, or any combination of those, or by other

---

[2] The subsequent actions taken to correct the affidavit and search warrant also do not support a Fourth Amendment claim. Those revisions were merely clerical in nature and had no bearing on the probable cause determination or the reasonableness of the search.

>     means.

Utah R. Crim. P. 40(l)(1) (West 2010). Subsection (l)(4) goes on to state:

> *Signing warrant.* Upon approval, the magistrate may direct the peace officer or the prosecuting attorney requesting a warrant from a remote location to sign the magistrate's name on a warrant at a remote location.

Utah R. Cim. P. 40(l)(4) (West 2010).

Plaintiff contends that the term "remote" as used in this rule refers only to distant or inaccessible areas, not to the urban area in which Plaintiff was arrested. Plaintiff does not offer any legal support for this interpretation, nor is it supported by the plain language of the rule itself. As the title of the rule plainly suggests, the term "remote" in this context refers only to the means by which the communication occurs, not to the requesting official's distance from the courthouse or some other location. Similarly, the term "remote location" merely refers to the location from which remote communication occurs. This interpretation is further supported by the qualifying language "[w]hen reasonable under the circumstances," which clearly encompasses situations besides the requesting official being far removed from the issuing magistrate. Such reasonable circumstances may exist when a warrant is sought late at night or

at other times when a magistrate is not ordinarily available, as in this case. Thus, the Court concludes that the search warrant here is not invalid because it was remotely communicated or signed.[3]

Based on its finding that the warrant here was amply supported by probable cause and properly authorized by the issuing magistrate, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's claims of unreasonable search and seizure related to the blood draw.

### C. Conditions of Confinement

Plaintiff claims that he was denied drinking water and restroom access for an extended period of time in violation of his substantive due process rights. The Tenth Circuit has held that although pretrial detainees are protected against unconstitutional conditions of confinement under the Due Process Clause, the Eight Amendment's deliberate indifference standard provides the benchmark for such claims. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002). To establish deliberate indifference based on inhumane conditions of confinement, a Section 1983 plaintiff must satisfy both an

---

[3] Once again, the subsequent personal signing and dating of the warrant by the issuing magistrate was merely a clerical action which did not render it invalid under the Fourth Amendment.

objective and a subjective component.  Under the objective component, the deprivation alleged must be sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).  Under the subjective component, the official must have acted with a sufficiently culpable state of mind, namely "deliberate indifference to inmate health or safety."  *Id*.  With regard to this second requirement, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety."  *Id*. at 837.  The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result."  *Id*. at 835.  The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware."  *Id*. at 836-37.

Plaintiff has not presented sufficient evidence to satisfy either the objective or subjective component of the Eighth Amendment test.  First, Plaintiff has not shown that he was denied drinking water or restroom access for such an extended

16

period that he faced a substantial risk of serious harm. In fact, there is no evidence that Plaintiff suffered any ill effects from lack of water or denial of restroom access.

Second, even if Plaintiff could satisfy the objective test, Plaintiff cannot show that Defendant was deliberately indifferent to Plaintiff's needs. There is no evidence in the record that Defendant deliberately refused Plaintiff's requests for drinking water or restroom access, much less that Defendant subjectively perceived an urgent need for such accommodations. Thus, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's conditions of confinement claims.

### D. Procedural Due Process

Plaintiff's procedural due process claims are based on the following allegations: (1) Plaintiff was not given *Miranda* warnings before being questioned about why he refused to provide his correct name; and, (2) Plaintiff was not given a copy of the search warrant before the blood sample was taken from him. Neither of these allegations are sufficient to support a cognizable § 1983 claim.

Regarding the first allegation, Plaintiff has not shown that he was ever convicted for refusing to provide his correct name at the time of his arrest. Although the record shows Plaintiff was charged with interference with arrest, that charge

17

was dropped in return for Plaintiff's guilty plea to driving under the influence of alcohol. Thus, Plaintiff cannot show any injury resulting from the alleged *Miranda* violation, even assuming that one occurred.

Regarding Plaintiff's second allegation--concerning not being presented with the search warrant--even if Plaintiff could show a constitutional right to such access, Plaintiff's claim would be barred under the *Heck* doctrine.[4] In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364 (1994), the Supreme Court held that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." H*eck*, 512 U.S. at 480-82 (emphasis added). *Heck* states that claims for damages or release from confinement based on unconstitutional imprisonment are not cognizable under § 1983 unless the plaintiff can show that his conviction or sentence has already been invalidated. *Id*. at 487. Thus, before filing a civil rights suit that could undermine the validity of his conviction an inmate must "prove that [his]

---

[4] It is likely that several of Plaintiff's other claims, including his Fourth Amendment claims, would also be barred by *Heck*, however, because those claims have been found insufficient on other grounds the Court need not address whether they are also subject to the *Heck* bar.

conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.*

Plaintiff's assertion that the blood alcohol evidence should have been suppressed for failure to present him with the valid warrant clearly seeks to undermine the validity of his conviction. As explained in *Heck*, however, a Section 1983 suit is not the proper avenue for raising such claims. Moreover, Plaintiff cannot obtain damages on this claim under Section 1983 because he has not shown that his conviction has previously been invalidated through appropriate channels.

Thus, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's procedural due process claims.

### E. Equal Protection

Plaintiff vaguely alleges that he was denied equal protection of the laws in violation of the Fourteenth Amendment. To state a viable equal protection claim Plaintiff must show that the government treated him differently than other persons who are similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249 (1985)). Plaintiff has not made any such showing. Thus, Defendant is entitled to summary judgment on Plaintiff's equal protection claim.

19

**ORDER**

Based on the foregoing analysis, **IT IS HEREBY ORDERED** that:

(1) Defendant's Motion for Summary Judgment (Doc. no. 29) is **GRANTED**; and,

(2) this case is **CLOSED**.

Dated this 29th day of June, 2010.

BY THE COURT:

_____
DAVID SAM
United States District Judge